## CHARLES V. CRASTER, PLAINTIFF, v. BOARD OF COMMISSIONERS OF THE CITY OF NEWARK, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided November 29, 1951.

Messrs. *Chanalis, Lynch & Maloney* (*Mr. Michael N. Chanalis* appearing), attorneys for plaintiff.

*Mr. Charles Handler*, attorney for defendant.

EWART, J. S. C. The plaintiff, having retired as health officer of the City of Newark as of August 15, 1951, after upwards of 36 years of continuous service in that office and employment, sues to compel the Board of Commissioners of the City of Newark to pay him in semi-monthly installments one-half of the salary of $10,900 which he was receiving at the time of his retirement, under the provisions of *L.* 1923, *c.* 103, as amended and supplemented (*R. S.* 43:12–1 *et seq.*).

The board of commissioners deny plaintiff's right to the payments sought on the grounds that plaintiff was a member of the Newark Board of Health Pension Fund Association; that he was retired by reason of advanced age and inability to longer perform his duties, under the provisions of *L.* 1913, *c.* 215, as amended and supplemented (*paragraph III* of *R. S.* 43:18–15); that plaintiff is entitled upon retirement to receive payments from the board of trustees of said pension fund under the provisions of said act last referred to; and that the plaintiff is not entitled to the payments sought under *R. S.* 43:12–1 *et seq.*

With the exception noted below, the facts of the controversy are not in dispute. Plaintiff entered the employ of the defendant city as health officer on June 1, 1915, and served in that office uninterruptedly until his retirement on August 15, 1951, at the age of 79 years. On February 15, 1951, plaintiff wrote a letter to Hon. Stephen J. Moran, Director of Public Health of the City of Newark, and who is also Director of the Department of Public Affairs of the city, requesting, because of poor health at that time, a six-months' sick leave to run from February 15 to August 15, 1951, and tendering his resignation as health officer to become effective August 15, 1951. The following day, Director Moran wrote the plaintiff acknowledging plaintiff's letter, accepting the latter's resignation to become effective August 15, 1951, and granting the sick leave requested. In his letter, the director also expressed the hope that plaintiff would obtain the financial benefits to which he was entitled under the laws governing the Newark pension fund association (see *R. S.* 43:18–1 *et seq.*). February 28, 1951, the plaintiff again wrote director Moran, by way of supplement to his letter of February 15, 1951, setting forth his qualifications for retirement and that he was exercising his option of retiring on pension equal to one-half of his salary under the provisions of the statute, *R. S.* 43:12–1 *et seq.* Director Moran wrote the plaintiff under date of February 28, 1951, stating that it was the director's understanding that the plaintiff would apply to

the pension fund association for the benefits to which he was entitled, and in his letter the director refused to entertain plaintiff's application for retirement under the provisions of *R. S.* 43 :12–1 and directed the plaintiff to apply to the pension fund association. Thereafter, in the month of September, 1951, plaintiff filed a formal verified petition with the board of commissioners setting forth the facts of his employment as city health officer aforesaid; that he had attained the age of 79 years on April 15, 1951; that he had been retired as health officer as of August 15, 1951; that his salary at the date of his retirement was $10,900 per annum; and requesting that he be paid a pension of $5,450 per annum pursuant to the provisions of the statute, *R. S.* 43 :12–1. Thereafter, on October 3, 1951, the city commissioners adopted a resolution denying plaintiff's request that he be paid the pension provided by *R. S.* 43 :12–1 "because the said employee, as a member of the Newark Board of Health Pension Fund Association, is entitled to be retired on pension as a member thereof." October 24, 1951, the board of trustees of the Newark Board of Health Pension Fund Association, existing under the provisions of *R. S.* 43 :18–1, adopted a resolution reciting the action of the board of commissioners of the defendant city, including the statement that the employment of the plaintiff as health officer had been terminated August 15, 1951, pursuant to the provisions of *R. S.* 43 :18–1, and placing the plaintiff on the retirement roll and directing the proper officers of the fund to effect payment of pension benefits to the plaintiff as a retired member of the fund.

It is to be noted that the plaintiff never applied to the trustees of the pension fund association for retirement as required by *R. S.* 43 :18–14 and that Director Moran, by his letter of February 16, 1951, accepted plaintiff's resignation as health officer, to become effective August 15, 1951.

It further appears that plaintiff had been, in fact, a member of the Newark Board of Health Pension Fund Association; that he was eligible for pension from the pension fund associa-

tion had he chosen to apply therefor; that on or about October 24, 1951, the pension fund association forwarded to plaintiff a check in payment of the pension accrued between August 15 and October 15, 1951, as well as subsequent checks for pension subsequently accruing, under the provisions of *R. S.* 43 :18–1 *et seq.*, but that the plaintiff returned to the pension fund association said checks and refused to accept or cash the same.

The only matter in dispute is that Director Moran takes the position, as set forth in his letter of February 28, 1951, that it was his understanding, in his conversations with the plaintiff, that the plaintiff would apply to the Newark Board of Health Pension Fund Association for the financial benefits to which he was entitled, whereas plaintiff denies that he had any conversations whatever with Director Moran on that subject prior to his letter of February 28, 1951, to the director in which he applied for a pension under the provisions of *R. S.* 43 :12–1 *et seq.* And, as stated, it appears in fact that the plaintiff never applied to the pension fund association as required by *R. S.* 43 :18–14.

By enactment of the Legislature, two separate and distinct plans for retirement of city officers and employees have been created. The first plan was created under the provisions of *L.* 1913, *c.* 215 (*R. S.* 43 :18–1 *et seq.*), which plan provided for the organization of a corporation or association to be composed of officers and employees of the Department of Health, to be managed by a board of three trustees, to which the member employees and the city would jointly contribute toward the creation of a fund for the payment of pensions to retired employees; and the statute provides for the payment of a pension to such retired member who qualifies under the statute, of a sum equal to one-half of his average salary for the past two years of his employment. The statute sets up certain qualifications that have to be met before one may receive a pension from the retirement fund, including generally the provision that one must have served in office continuously for 25 years, must have paid all dues and assess-

ments, and must have attained a minimum age of 55 years. In addition, section 14 of the act provides that any applicant for retirement under the provisions of the act shall apply therefor in writing to the board of trustees of the pension fund.

The second plan was provided by *L.* 1923, *c.* 103, as amended and supplemented (*R. S.* 43:12–1 *et seq.*), the title of which act reads: "An Act to provide for the maintenance of old and faithful servants of the several cities of the State of New Jersey." It sets up a somewhat different scheme looking to the retirement of city employees, does not require membership in a pension fund, and provides for retirement on half-pay of any city employee who has served continuously for 25 years and who has reached the age of 70, or who has served continuously for a period of 40 years and has reached the age of 60, or who has served a total of 25 years, whether or not continuous, and who has reached the age of 75 years.

■ Both statutes evince a legislative policy to permit retirement on half-pay of city employees who meet the qualifications set forth in the respective acts, although, of course, a retired employee would not be entitled to pensions under both acts. *Judson v. Newark Board of Works Pension Association,* 132 *N. J. L.* 106 (*Sup. Ct.* 1944), affirmed 133 *N. J. L.* 28 (*E. & A.* 1945).

■ These two statutes deal generally with the same subject, are *in pari materia,* and effect should be given to both of them. *Gottuso v. Baker,* 80 *N. J. L.* 520 (*Sup. Ct.* 1910); *Newark Express and Transportation Co. v. D., L. and W. R. Co.,* 89 *N. J. L.* 494, 503 (*Sup. Ct.* 1916); *Gardner v. Hall,* 132 *N. J. Eq.* 64 (*Ch.* 1942), affirmed 133 *N. J. Eq.* 287 (*E. & A.* 1943); *Bruck v. The Credit Corp.,* 3 *N. J.* 401, 408 (1950).

■ The plaintiff, by reason of his continuous employment for upwards of 25 years and the fact that he had attained an age in excess of 70 years, has met the conditions imposed by the 1923 statute (*R. S.* 43:12–1 *et seq.*) according to its unambiguous language and is entitled to the benefits conferred

by that act. There is nothing in the 1923 act that would deprive him of such benefits merely because he was a member of the pension fund provided by the 1913 act (*R. S.* 43:18–1). It is to be presumed that the Legislature passed the 1923 act with knowledge of the scheme of retirement set up under the 1913 act and that had the Legislature desired to impose as a condition for retirement under the 1923 act non-membership in the pension fund under the 1913 act, it would have done so by simple and express language. *Borough of Oakland v. Board of Conservation and Development,* 98 *N. J. L.* 99 (*Sup. Ct.* 1922), reversed on other grounds 98 *N. J. L.* 806 (*E. & A.* 1923).

Plaintiff has not made an election to accept the benefits of the 1913 act either by applying to the board of trustees of the pension fund for retirement as provided by section 14 of the act (*R. S.* 43:18–14), nor by accepting pension payments under that act which the board of trustees of the pension fund have tendered him at the suggestion of the defendant board of commissioners. Our courts seem to recognize the right of an employee eligible for retirement to elect the statute under which he would apply for retirement benefits where he appeared to be qualified under either of two statutory schemes. *Judson v. Newark Board of Works Pension Association,* 132 *N. J. L.* 106 (*Sup. Ct.* 1944), affirmed 133 *N. J. L.* 28 (*E. & A.* 1945). Furthermore, the defendant Board of Commissioners of the City of Newark recognize that right in the *Judson* case, *supra,* by retiring Judson under the provisions of the 1923 act even though he appeared qualified for a pension under the provisions of the 1913 act.

I conclude that the plaintiff had met all of the requirements for retirement under the 1923 act; that he had the right to elect whether to retire under the 1923 act or the 1913 act; and that his election to retire under the 1923 act is binding upon the defendant board of commissioners. Accordingly, defendant's motion for summary judgment will be denied and plaintiff's motion for summary judgment granted.